**IN THE UNITED STATES DISTRIT COURT**
**FOR THE DISTRICT OF COLORADO**
**AP DOCKET**

**Civil Action Number 20-cv-01366-MSK**

**ANDREA C JOHNSTON,**

   **Plaintiff,**

**v.**

**ANDREW M. SAUL, Commissioner of Social Security,**

   **Defendant.**

---

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE BRIEF**

---

**I.    INTRODUCTION**

   The Plaintiff has reviewed the Defendant's Response Brief **(ECF 16)**, and respectfully contends that the Defendant has not cited evidence that validates the denial of Disability Insurance Benefits (DIB), decided by the Administrative Law Judge (ALJ). **(AR 13-24)** [1]

   The Plaintiff respectfully contends that nothing in evidence of record, as whole, indicates that the Plaintiff's mental health had improved to the extent the ALJ implies in her decision. The Plaintiff further contends that the

---

[1] Throughout this Plaintiff's Reply Brief document, the abbreviation "AR" represents "Administrative Record".

"revised rules"[2] have not invalidated the overwhelming evidence supporting the Plaintiff's claims. As such, the **ALJ's conclusions are clearly overwhelmed by the evidence of record**, which invalidates her decision.

"*Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.*" *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005). ***"Evidence is not substantial if it is overwhelmed by other evidence or constitutes mere conclusion."*** *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The Court must "*meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met.*" *Grogan, 399 F.3d at 1262.*

The Plaintiff maintains that the ALJ made errors of law, as defined by the United States Federal Administrative Law, within Codes of Federal Regulations (CFRs) **20 CFR 404.1520 *et seq.*, and 20 CFR 416.920 *et seq.*,** and within **20 CFR 404.1529 *et seq.*;** and **20 CFR 416.929 *et seq.*.**

She further maintains that the ALJ erred by failing to apply proper legal standards this case, as defined in Social Security Rulings (SSRs): **SSR 16-3p**, **SSR 96-8p** and **SSR 00-4p**.

---

[2] Throughout this Reply Brief, the phrase "revised rules" represents the agency's "published revisions to its regulations regarding the evaluation of medical evidence, which became effective on March 27, 2017".

Therefore, the Plaintiff respectfully requests the Court to order a remand for immediate award of DIB, representing the maximum monthly amount and any additional relief as may be just and proper under the circumstances of this case.

**More than 52 months have passed** since the Plaintiff was forced to stop working full time, due to mental health limitations, in September 2016. **(ECF 15 at 6-7) (AR 19, 36-38)** Repeated delays in awarding the Plaintiff's DIB continue to cause debilitating financial stress and exacerbate the Plaintiff's mental health limitations.

II.   **STATEMENT OF FACTS**

A. **Standard of Review**

The standard of review in this case is Statute 42 USC 405(g) and Statute 42 USC 1383(c).

B. **Jurisdiction**

The Plaintiff's right to Federal Court review for claims under Title II (Social Security) is provided for in Section 205(g) of the Social Security Act. This section is also Section 405(g) of the United States Code.

The right to Federal Court review for claims under Title XVI (Supplemental Security Income) is provided for in the Section 1631(c)(3) of the Social Security Act. This is also Section 1383(c) of Title 42 of the United States Code.

The Plaintiff resides at 6217 South Sterne Parkway in Littleton, Colorado, and the hearing presided by ALJ Cynthia K. Hale on September 23, 2019, took place at the Denver Office of Hearings Operations (OHO), located at 1244 Speer Boulevard in Denver, Colorado.

The ALJ's decision became the final decision of the Commissioner of Social Security in the Plaintiff's case, as stated in the notification letter from the Appeals Council (AC), dated April 17, 2020. The Plaintiff has exhausted all administrative remedies available.

Thus, the United States District Court for the District of Colorado is the appropriate venue for this case.

## C. Procedural History

On June 28, 2018, the Plaintiff protectively filed a Title II application for a period of disability and DIB, as Social Security Disability Income (SSDI). The Plaintiff also protectively filed a Title XVI application for Supplemental Security Income (SSI). In both applications, the Plaintiff stated her inability to work began June 15, 2017. These claims were denied initially on October 1, 2018. **(AR 96-99)** Thereafter, the Plaintiff filed a written request for hearing on October 25, 2018. (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*) **(AR 100)**

The Plaintiff appeared and testified at a hearing held on September 23, 2019, in Denver, Colorado with Cynthia K. Hale, ALJ, presiding.

William J. Tysdal, an impartial vocational expert (VE), also appeared at
the hearing. The Plaintiff was represented by Thomas G. Hill, an attorney.
The Plaintiff was notified of "Decision – Unfavorable" in a letter from the
ALJ dated November 6, 2019. **(AR 10-29)**

Plaintiff's attorney Steven R. Earl filed a request to have the ALJ's
decision reviewed by the Appeals Council (AC), at the U.S. Social Security
Administration - Office of Disability Adjudication and Review on December
10, 2019. **(AR 155-156)** The Plaintiff's attorney Thomas G. Hill submitted
a Representative Brief to the AC on January 7, 2020. **(AR 252-254)** The
AC denied to review the ALJ's decision, so the ALJ's decision became the
final decision of the Commissioner of Social Security in the Plaintiff's case,
as stated in the AC's notification letter, dated April 17, 2020. **(AR 1-6)**

On May 13, 2020, the Plaintiff filed a Federal complaint in United
States District Court, District of Colorado, for review and reversal of the
ALJ's decision of "not disabled". **(ECF 1)** The Plaintiff's Opening Brief –
Corrected, was filed October 29, 2020. **(ECF 15).** The Defendant's
Response to the Plaintiff's Opening Brief was filed November 24, 2020.
**(ECF 16)**

**D.  The Plaintiff respectfully contends that the Defendant's Response
Brief contains numerous errors. (ECF 16)**

1.  The Defendant misstated that the Plaintiff had declined her right to
cross-examine the VE, and that the ALJ cited ***"uncontroverted expert***

***testimony"***. The Plaintiff did not decline to cross-examine the VE, as the Defendant stated. Also, the VE's testimony was not uncontroverted. The Defendant stated:

> *"The ALJ gave Plaintiff the opportunity to cross-examine the vocational expert but Plaintiff (through her counsel at the hearing) declined (Tr. 31, 59, 148). Then the ALJ cited the **uncontroverted expert testimony** in finding at step five that Plaintiff could perform these three occupations and they existed in significant numbers in the national economy (Tr. 23-24)."* **(ECF 16 at 19)**

The Plaintiff provides **clarification for the Court:** *Before* the ALJ asked the Plaintiff's attorney, Thomas G. Hill, if he had any questions for the VE, she inquired the VE about two hypothetical limitations combined with the RFC: **off task interruptions** or **absenteeism**. The VE testified his response for the Court, confirming that if either of the two hypothetical limitations were present, they would effectively eliminate ALL available and competing positions from consideration for the Plaintiff. **(AR 58-59)** This was already argued in the Plaintiff's Opening Brief. **(ECF 15 at 23-24, 49-50)** Therefore, when the ALJ did ask the Plaintiff's attorney, Thomas G. Hill, if he had questions, Mr. Hill answered the ALJ directly, stating that her hypotheticals basically matched his notes for cross-examination on behalf of the Plaintiff.

An excerpt from the transcript below depicts the true verbal exchange between the ALJ and Mr. Hill. The ALJ had already cross-examined her own witness by inquiring about disqualifications for two hypotheticals before she asked the Plaintiff's attorney if he had questions regarding the VE's testimony.  **(AR 59)**

> *"ALJ:  Okay. And, Counsel, do you have some questions?*
>
> *ATTY:  I have to tell you, you just about almost exactly asked my entire RFC. The only thing I wrote differently was that she would be **unable to complete an 8-hour workday or a 40-hour work week** on a consistent basis due to interference from symptoms, but I think [your] off task 15 percent - -*
>
> *ALJ:  And the **absences**.*
>
> *ATTY:  - -and your absence question probably covered that just adequately.*
>
> *ALJ:  Okay.*
>
> *ATTY:  Thank you."* **(AR 59)**

**2.**  The Defendant misinterpreted objective medical evidence, directly from the Commissioner (ALJ), in her decision. The Defendant states: *"This statutory standard of review defers to the presiding ALJ, **'who has seen the hearing up close'".** **(ECF 16 at 6)** The Plaintiff contends that the ALJ's empirical observations of the Plaintiff during the hearing

serve as **objective medical evidence**, supporting the Plaintiff's arguments regarding exertional limitations. **(20 CFR 404.1502(b))** The Plaintiff provides **clarification for the Court**: Throughout the hearing, the ALJ empirically observed the Plaintiff's signs of mental health limitations. The written transcript of the hearing **(AR 30-62)** has not captured the Plaintiff's inability to cope with her emotions during the hearing. However, in the audio recording, it is obvious that the Plaintiff was unable to control her emotions, when she became stressed by the questions from the ALJ, or her attorney. Several pages in the written transcript state "no verbal response", or "[PHONETIC]", which represent the Plaintiff's inability to answer, or the Plaintiff crying or blowing her nose. **(AR 39, 42, 43, 44, 49)** The Plaintiff further contends that, as the hearing progressed, her inability to answer the ALJ worsened (was less direct and more rambling), because she had surpassed her exertional limits. **(AR 48-53, 60-61) (20 CFR 404.1502(b))**

3. The Defendant misrepresented the Plaintiff's citations regarding the verbiage used for "treating physician" and "non-treating physician". The Plaintiff's descriptions of treatment providers remain literally true, despite the "revised rules".

> *"Plaintiff argues that the ALJ was not permitted to find*
>
> *persuasive Dr. Sexton's opinion because she did not*

> *examine Plaintiff and Dr. Bali had an extensive relationship*
>
> *with her (Pl. Br. 37-38). But this argument fails to*
>
> *acknowledge that the treating source rule was not retained in*
>
> *the revised regulations. 20 C.F.R. § 404.1520c; 82 Fed.*
>
> *Reg. at 5853"* **(ECF 16 at 12)**

The Plaintiff provides **clarification for the Court:** Not only is this statement an <u>incorrect speculation</u> by the Defendant of the Plaintiff's communication, it misrepresents the Plaintiff's evidence invalidating evidence from Disability Determination Services (DDS), as argued in the Plaintiff's Opening Brief. **(ECF 15 at 37)** The Plaintiff based her comparisons of Dr. Bali's evidence against DDS reports according to the consistency and supportability of the evidence, compliant with the "revised rules". **(20 CFR 404.1520(c)(3)** Furthermore, despite the "revised rules", the phrase "treating physicians" remains literally accurate to describe the Plaintiff's treatment providers.

4. The Defendant misrepresented the Plaintiff's work history prior to onset in June 2017.

> *"A few months prior to her June 2017 alleged disability*
>
> *onset, Plaintiff resigned from a full-time software support job*
>
> *when she was required to take on more tasks, and she*
>
> *worked part-time until June 2017 (Tr. 36-39)."* **(ECF 16 at 2)**

The Plaintiff provides **clarification for the Court:** The evidence of record reflects that the Plaintiff was forced to stop working September 9, 2016, due to her performance limitations under overwhelming stress. **(AR 19, 36-38)** The Plaintiff did not work after September 2016, until she started part-time research on June 1, 2017, which ended just two weeks later, due to a family crisis. **(AR 37)** Furthermore, the Plaintiff did not file DIB applications until June 28, 2018, almost two after September 2016. **(AR 13)**

5.  The Defendant misrepresented the Plaintiff's ongoing treatment with her psychiatrist. The Defendant stated: *"…from December 2018 through the **final visit in May 2019**…"* **(ECF 16 at 4)** The Plaintiff provides **clarification for the Court:**  May 2019 was not the Plaintiff's *"final visit"* with Dr. Bali. The Plaintiff's treatment with Dr. Bali is still ongoing, since onset, and has not been interrupted since her first evaluation in 2017. **(AR 40)** Furthermore, the evidence of record reflects that Dr. Bali's mental health evaluation completed September 4, 2019 was clearly after May 2019. **(AR 668-674)**

6.  The Defendant misrepresented the evidence of record: *"Dr. Bali reported that Plaintiff's depression, anxiety, and PTSD were stable, and she had normal physical and mental status examinations (Tr. 632-34, 652-54, 659-61)."* **(ECF 16 at 4)** The Plaintiff provides the **clarification for the Court:** The Defendant's references *"(Tr. 632-34,*

*652-54, 659-61)."* are pages "cherry picked" from the evidence of record. The same medical records from AllHealth Network clearly depict the Plaintiff was often "abnormal" "unstable/worsening", and/or "chronic", as argued in the Plaintiff's Opening Brief. **(ECF 15 at 45)**

7.  The Defendant's following statement is misleading: *"Plaintiff had a history of anxiety and depression, which were generally stable with medication (see, e.g., Tr. 273-86)."* The Plaintiff provides **clarification for the Court:** The Defendant's statement cites Plaintiff's medical records from 2013-2016, with Dr. Linda Williams, M.D., prior to the Plaintiff's onset date in 2017. (*"Tr. 273-86)."*") This citation by the Defendant does not support the ALJ's denial of DIB, because it does not reference any evidence in the record after the Plaintiff's onset date. **(ECF 16 at 3) (AR 273-286)** Furthermore, the record reflects the Plaintiff was often "abnormal" "unstable/worsening", and/or "chronic", as argued in the Plaintiff's Opening Brief. **(ECF 15 at 45)**

8.  The Defendant misrepresented the Plaintiff's capabilities to persist in performing daily activities, by citing a stale SSA form "Function Report - Adult", completed in September 2018.

> *"…she was able to engage in daily activities inconsistent with disabling limitations, such as attending to her personal care, doing household chores and repairs, shopping, and managing her finances (Tr. 20, 206-08). 20 C.F.R. §*

> *404.1529(c)(3)(i) (in evaluating symptoms, ALJ considers a*
>
> *claimant's daily activities)."* **(ECF 16 at 15) (AR 204-212)**

9. The Defendant misstated the Plaintiff's medical history with her

   psychiatrists. The Defendant stated:

   > *"At the end of June 2017, Plaintiff began seeing Trent Perry,*
   >
   > *M.S., at All Health Network for regular psychotherapy, and in*
   >
   > *early **July 2015**, she began seeing psychiatrist Maninder*
   >
   > *Bali, M.D., at that clinic for medication management (Tr. 305,*
   >
   > *312)"* **(ECF 16 at 3) (AR 305, 312)**

   The Plaintiff provides the following **clarification for the Court:** The

   evidence of record states the Plaintiff's psychiatrist throughout 2015

   was exclusively Dr. Linda Williams, M.D., and that the Plaintiff began

   treatment with Dr. Maninder Bali, M.D. in early **July 2017**, two years

   later.

**E.  Plaintiff's Review of the Defendant's Response Brief**

1. The Plaintiff maintains that the Defendant has not cited evidence that

   validates that the ALJ had properly applied the legal standards for

   evaluation of evidence regarding "extreme" and "marked" limitations

   required to find the Plaintiff "disabled" at step three. **(ECF 15 at 27-32,**

   **35-38) (AR 498-502, 668-674) (20 CFR 404.1520(a)) (20 CFR 404**

   **Part P, Appendix 1, Section 12.00(F)) (SSR 16-3p) (SSR 96-8p)**

2. Furthermore, the **Plaintiff's maintains that her overwhelming evidence** confirms the severity and persistence of her functional limitations, as required in paragraph B, to find a person "disabled" under listings 12.04, 12.06 and 12.15, as argued in the Plaintiff's Opening Brief. **(ECF 15 at 27-32, 35-38) (ECF 16 at 10-14) (20 CFR 404.1520(a)) (20 CFR 404 Part P, Appendix 1, Section 12.00(F)) (SSR 16-3p) (SSR 96-8p)**

3. The Defendant has not cited evidence to refute the Plaintiff's argument that the ALJ's repeated reason for denial: *"…**not entirely consistent with the medical evidence**…"* is a legal error, clearly against the rules of adjudication, as stated in SSR 16-3p. Refer to Plaintiff's Opening Brief. **(ECF 15 at 45-47) (ECF 16 at 19) (SSR 16-3p)**

4. The Defendant has not cited valid evidence to refute the Plaintiff's **objective medical evidence**, confirming her **signs of fatigue**. **(ECF 15 at 42, 43, 48) (ECF 16 at 15-16) (AR 314, AR 498-502, 668-674) (20 CFR 404.1502(a) and (f) and(g)) (20 CFR 404.1520(c)(3)) (SSR 16-3p)** The Defendant states: *"Plaintiff also has not pointed to any objective medical evidence showing that her medication side effects and fatigue warranted additional functional limitations not addressed in the ALJ's RFC finding".* **(ECF 16 at 15-16)**

   a. As argued in the Plaintiff's Opening Brief, Dr. Bali's mental health evaluations from 2018 and 2019 represent very

thorough objective medical evidence, consistent with the evidence of record, as a whole. **(AR 498-502, 668-674)**

b. Dr. Bali is an Acceptable Medical Source (AMS), as a Licensed Physician (Colorado medical license: 50917), with credentials of M.D. and specialization of Psychiatry. (**20 CFR 404.1502(a)**) **(20 CFR 404.1529(c)(4))**

c. Dr. Bali's 2018 and 2019 mental health evaluations show documented "signs" of fatigue, as defined in **20 CFR 404.1502(g):**

*"Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g.,* ***abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated."*** **((20 CFR 404.1502(g)) (AR 668-674)**

d. Dr. Bali's mental health evaluation on September 4, 2019 was performed during the same month as the ALJ hearing on September 23, 2019. **(AR 668-674)** Citations include:

  i. Dr. Bali's notation that side effects of the Plaintiff's prescriptions may affect working: "**sedation**", "**drowsiness**", "**fatigue**" and "**dizziness**". **(AR 669)**

ii.    Dr. Bali's notations about the Plaintiff's significant decline from prior level of functioning, where she identified signs of: **"sleep disturbance"**, **"decreased energy"** and **"easily fatigued"**. **(AR 670)**

iii.   Dr. Bali's designation "unable to meet competitive standards", regarding the Plaintiff's capabilities to: "1) **perform at a consistent pace without an unreasonable number and length of rest periods**; 2) accept instructions and respond appropriately to criticism from supervisors; 3) respond appropriately to changes in routine work setting; and 4) deal with normal work stress." **(AR 671)**

iv.    Dr. Bali's designation **"Marked",** regarding degree of expected limitations in a work setting: "1) concentrating; 2) **persisting**; 3) **maintaining pace**; and 4) adapting in the workplace"

v.     Dr. Bali's designation regarding the **Plaintiff's "chronic mental disorder is 'serious and persistent'"**. **(AR 673)**

vi.    Dr. Bali's designation indicating the Plaintiff's impairments would interrupt a full-time work schedule,

by causing **absence "more than four days per month**" **(AR 674)**

5. The Defendant has not cited evidence to invalidate the Plaintiff's **symptoms of fatigue**, for which she testified, under oath at the ALJ hearing. **(ECF 15 at 41-47) (ECF 16 at 15) (AR 41-52 and 204-212) (20 CFR 404.1502(e) and (i)) (CFR 404.1520(a)) (SSR 16-3p)**

   a. *"when I wake up in the morning, I have a routine that is slow and I intentionally make appointments and activity and plans for afternoon, if I can help it at all, because I have a hard time getting going every day."* **(AR 41)**

   b. *"I can focus my attention and energy, together, to work for me for a period of about two hours…and then I need to lie down."* **(AR 42)**

   c. *"I often need two naps in one day and sometimes I don't get out of bed at all."* **(AR 42)**

   d. *"The fatigue happens more if I exert, like if I leave the house and I - - I go erranding [PHONETIC] twice a month and I have appointments two or three times a month with my doctors and then I have other reasons to leave the house a couple times a month and those days I need an extra nap."* **(AR 43)**

e. *"…the days I can't get out of bed happen maybe three of four times a month"* **(AR 43)**

f. *"…even when I'm doing simple things, I get interrupted by a thought in my head or somebody would start talking or something loud happens, it wipes the slate clean and so I have to start over."* **(AR 45)**

g. *"I plan my erranding twice a month, early afternoon like on a Tuesday or whatever during the week when people are working, and everything I do is like all in the same intersection. So, like I have my bank and my pharmacy and my grocery and my gas station and where I get my tires checked and everything is all in one corner."* **(AR 45-46)**

h. *"I don't want to be around a lot of people. I can -- like I can do it -- I used to be able to do it for family occasions and stuff and then I would need a day – the next day I would be in bed all day, just recovering from the energy it took to do it."* **(AR 46)**

i. *"chores are not a problem because I can break them down into 10 or 15 minutes"* **(AR 47)**

j. *"anxiety interrupts my day, several times a day, every day"* **(AR 52)**

6. The Plaintiff respectfully contends that the Defendant has not cited evidence that validates the ALJ's reasons for denial of DIB. The Plaintiff further contends the ALJ's reasons for denial of DIB are not valid, whether based on citations of the Plaintiff's **"*improvement after the alleged onset"* or *"normal mental status"*[3]**. The Plaintiff further contends that the ALJ's citations of isolated temporal events that misrepresent the evidence of record, as a whole, are also invalid.

7. The Plaintiff respectfully contends that, regardless of the "revised rules", **nothing in evidence of record, as whole, indicates that the Plaintiff's mental health had improved** to the extent the ALJ implies in her decision.

   a. The Plaintiff's Opening Brief has already refuted the ALJ's reasons citing *"improvement after alleged onset"*.  **(ECF 15 at 16-17) (AR 21-22)** The following are examples:

      i. *"… the extreme limitations are not supported by Dr. Bali's treatment records, which showed that the claimant's mental health conditions improved after the alleged onset date (4F; 16F)."* **(AR 21)**

      ii. *"The undersigned finds these opinions to be unpersuasive as they are not supported by Dr. Bali's*

---

[3] The ALJ relied very heavily upon two conclusions for denial of the Plaintiff's DIB, which she stated as slight variations of the following phrases: *"improvement after the alleged onset"* and *"mental status"*.

> *treatment records, which showed that the claimant's*
> *mental health conditions improved between after the*
> *alleged onset date (4F; 16F)."* **(AR 21)**

    iii.   *"… not consistent with the treatment records as a whole,*
        *which demonstrate that the claimant's mental health*
        *conditions improved as time passed (4F; 16F)."* [4] (**AR 22)**

b.  The Plaintiff further contends that Dr. Bali's July 2017 evaluation
    established the original baseline for subsequent comparisons of
    the Plaintiff's limitations ***"after the alleged onset"***. **(AR 312-**
    **314)** In fact, the <u>Defendant's Response</u> to the Plaintiff's Opening
    Brief stated:

> *"During the first encounter, Dr. Bali performed a*
> *psychological evaluation, and Plaintiff was depressed,*
> *anxious, and tearful and had fair insight and judgment (Tr.*
> *312, 314). Otherwise, she had generally normal physical and*
> *mental status examination findings, such as normal gait and*
> *station; intact strength; good eye contact; normal grooming,*
> *speech, language, concentration, and fund of knowledge;*
> *and intact memory (Tr. 314). Dr. Bali diagnosed depression,*
> *anxiety, and post-traumatic stress disorder (PTSD),*

*and started Plaintiff on Prozac and Wellbutrin (Tr. 314)."*

**(ECF 16 at 3) (AR 312-314)**

Therefore, the ALJ's presumptions based on the Plaintiff's

***"improvement after alleged onset"*** show **no variance** from

Dr. Bali's objective medical evidence, captured during her first

psychological evaluation of the Plaintiff, and are, therefore, **not**

**factual**. The record shows the Plaintiff originally presented with:

> *"generally normal physical and mental status examination*
>
> *findings, such as normal gait and station; intact strength;*
>
> *good eye contact; normal grooming, speech, language,*
>
> *concentration, and fund of knowledge; and intact memory"*.

**(ECF 16 at 3) (AR 314)**

c.  The Plaintiff further contends that If any evidence exists

depicting the Plaintiff's condition at onset differs from Dr. Bali's

first psychological evaluation in early July 2017, no such

evidence was stated by the ALJ in her decision letter, nor by the

Defendant in the Response Brief. **(AR 13-24, 312-314)**

8.  The Plaintiff respectfully contends that the Defendant has not cited

evidence that validates the ALJ's reasons for denial of DIB, based on

the Plaintiff's *"normal", "improved"* nor *"above average"* **mental status**

during medical appointments, nor based on results of cognitive tests.

**(ECF 16 at 3, 4, 11, 15) (AR 17, 20-22)** The Plaintiff has already

refuted the ALJ's "mental status" reasons in the Plaintiff's Opening Brief. **(ECF 15 at 43-45)** The following are examples of the ALJs "mental status" reasons:

a. *"…the claimant scored in the above average range for verbal learning and memory (15F/7, 19-20)."* **(AR 17)**

b. *On neurocognitive tests, the claimant scored in the above average range as well (15F/7)."* **(AR 20)**

c. *"They are also not consistent with the results of the claimant's mental status examinations, which largely showed normal concentration, attention, and memory[5] (4F; 15F/7; 16F)."* **(AR 21)**

d. *"It is also not consistent with the results of the mental status examinations, which largely showed normal concentration, attention, and memory (4F; 15F/7; 16F)."* **(AR 21)**

e. *"On neurocognitive tests, the claimant scored in the above average range (15F/7)."* **(AR 22)**

f. *"During mental status and physical examinations, the claimant's appearance was within normal limits (4F; 15F/7, 27; 16F)."* **(AR 22)**

9. The Plaintiff respectfully contends that the Defendant has not cited evidence that validates the ALJ's reasons for denial of DIB, based on

her citations of isolated temporal events, which have **misrepresented the evidence of record, as a whole**. The Plaintiff's Opening Brief has already refuted these reasons. **(ECF 15 at 12-14) (20 CFR 404.1520(a))**

10. The following are examples:

    a. *"… the claimant said she can walk a mile on a good day and her gait and station were normal during physical examinations (6E/7; 15F/27)."* **(AR 16)**

    b. *"Moreover, this condition may be related to the claimant's low vitamin D storage[6] value noted in her medical records (4F/124)."* **(AR 16)**

    c. *"The claimant was also able to list the months forward and backwards (15F/7)."* **(AR 22)**

    d. *"In May 2019, the claimant reported having good concentration (16F/95)."* **(AR 22)**

11. The Plaintiff respectfully contends that neither the Defendant, nor the ALJ, properly applied the legal standard entitled *"How we evaluate mental disorders involving exacerbations and remissions."* **(See 81 Fed. Reg. at 66,165) (20 CFR 404 Part P, Appendix 1, Section**

---

[6] This comment by the ALJ regarding the Plaintiff's "vitamin D storage" is a medical speculation regarding the Plaintiff's fatigue, and depicts a clear example of the ALJ drawing speculative conclusions from isolated notations in the evidence of record. This speculation by the ALJ was also noted in the Plaintiff's Opening Brief. **(ECF 15 at 13)**

**12.00(F)(4)) (SSR 16-3p) (SSR 96-p)** Under "revised rules", the following evaluations are required:

a. *"When we evaluate the effects of your mental disorder, we will consider how often you have exacerbations and remissions, how long they last, what causes your mental disorder to worsen or improve, and any other relevant information. We will assess any limitation of the affected paragraph B area(s) of mental functioning using the rating scale for the paragraph B criteria. We will consider whether you can use the area of mental functioning on a regular and continuing basis* **(8 hours a day, 5 days a week, or an equivalent work schedule).** *We will not find that you are able to work solely because you have a period(s) of improvement (remission), or that you are disabled solely because you have a period of worsening (exacerbation), of your mental disorder."* **(Id.)**

b. *"If you have a mental disorder involving exacerbations and remissions, you may be able to use the four areas of mental functioning to work for a few weeks or months. Recurrence or worsening of symptoms and signs, however,*

*can interfere enough to render you unable to sustain*

*the work." (Id.)*

12. The Plaintiff respectfully contends that the Defendant has not cited evidence that validates the ALJ's reasons for denial of DIB, which were based on the **"paragraph B" rules** for determination of the Plaintiff's "severity and persistence" of limitations at step three[7]. The Plaintiff has already refuted the ALJ's reasons, in the Plaintiff's Opening Brief. **(ECF 15 at 35)** The ALJ did not apply the proper legal standard: "*How do we use the paragraph B criteria to evaluate your mental disorder?'*" required for evaluation of medical evidence for mental health limitations. **(20 CFR 404.1520(a)) (20 CFR 404 Part P, Appendix 1, Section 12.00(F) (SSR 16-3p) (SSR 16-3p) (SSR 96-8p)**

13. Specifically, under the "revised rules", the Plaintiff contends that the ALJ did not evaluate the Plaintiff's "exacerbations and remissions", as required. **(See 81 Fed. Reg. at 66,165) (20 CFR 404 Part P, Appendix 1, Section 12.00(F)(4)) (SSR 16-3p) (SSR 96-8p)**

   a. The Plaintiff contends the ALJ excluded any discussion of "exacerbations and remissions" from her decision. **(AR 13-24) (20 CFR 404 Part P, Appendix 1, Section 12.00(F)(4))**

---

[7] Throughout this Reply Brief document "step three" means specifically, "step three of the five-step sequential evaluation process for determining whether an individual is disabled".

b. Additionally, the Plaintiff contends that the evidence of record clearly depicts numerous wide fluctuations in the Plaintiff's condition over the period of 27 months between "alleged onset" and ALJ hearing.  **(ECF 15 at 45) (ECF 16 at 11)**

c. Defendant has not cited evidence refuting the Plaintiff's arguments, citing the medical records stating her condition as intermittently "worsening/unstable", "abnormal" or "chronic", as stated in the Plaintiff's Opening Brief. **(ECF 15 at 45) (AR 320, 322-324, 331, 333-334, 350-351, 395, 425, 436, 566-567, 571-572, 574, 577-578. 580, 592, 596, 599, 618, 620, 622, 624, 626-628, 630, 650, 657)**

14. The Plaintiff concurs with the Defendant's statement in the Response to the Plaintiff's Opening Brief, that,

> *"on January 18, 2017, the agency published revisions to its regulations regarding the evaluation of medical evidence, which became effective on March 27, 2017."* **(ECF 16 at 7)**

15. The Plaintiff respectfully contends that the Defendant's detailed explanation of the **"revised rules"** has not invalidated the overwhelming evidence supporting the Plaintiff's claims. **(ECF 16 at 7-10)** Therefore, within any sentence in the Plaintiff's Opening Brief or

Reply Brief where verbiage may be technically incorrect under the "revised rules", the evidence, as a whole, remains valid. **(ECF 15)**

**F.  Undisputed Facts (ECF 15 and ECF 16)**

1.  The Plaintiff respectfully contends that the Defendant has not cited evidence to refute the Plaintiff's argument that her mental health condition was often described in the medical records as "worsening/unstable", "abnormal" or "chronic", as discussed in the Plaintiff's Opening Brief. **(ECF 15 at 45)** The Defendant instead echoed the ALJ's repeated reasons: *"showing improvement"* and *"mental status showing normal…",* in the Defendant's Response. **(ECF 16 at 11)**

2.  Moreover, the Defendant has not cited evidence to refute the Plaintiff's argument, that the ALJ excluded entirely from her decision any discussion of the medical records stating the Plaintiff's condition depicted as "abnormal", "unstable/worsening" and "chronic". **(ECF 15 at 45)**

    a.  *"abnormal"* (AR 333, 349, 428, 571, 576, 595, 620, 626)

    b.  *"unstable/worsening"* (AR 322-324, 333-334, 350-351, 566-567, 571-572, 577-578, 596, 622, 627-628)

    c.  *"chronic"* (AR 320, 322, 331, 395, 425, 436, 574, 580, 592, 599, 618, 624, 630, 650, 657)

3. Furthermore, the Defendant has not cited evidence refuting the Plaintiff's argument citing UCHealth neuropsychologist, Dr. Greher, in the Plaintiff's Opening Brief. Dr. Greher clarified a common misconception related to the discrepancy between the Plaintiff's cognitive test scores compared to chronic daily functional limitations. **(ECF 15 at 44)** In his summary of findings dated March 19, 2019, Dr. Greher stated:

> *"Of course, it is understood that there is a notable discrepancy between the patient's cognitive complaints and her actual abilities observed in objective testing. Such discrepancies are not uncommon in patients with significant psychological challenges and stressors, which tend to impact people more negatively in the course of more challenging demands of everyday life than they do in the controlled environment of neuropsychological testing."*

> *"I obviously fully support the patient's ongoing mental health treatments at AllHealth, given the chronic and severe nature of these challenges, and encourage her to inquire as to whether more frequent consultations with her psychiatrist (e.g., once per month) are possible, to help maximize her benefit."* **(AR 549)**

4. The Plaintiff's contends that a reasonable mind would conclude that her exertional limitations are clearly depicted by her exacerbations and remissions. As argued the Plaintiff's Opening Brief, the Plaintiff's fatigue and exertional limitations are misrepresented in the ALJ's RFC. **(ECF 15 at 47-48) (20 CFR 404.1545) (20 CFR 404.1569(a) (20 CFR 404 Part P, Appendix 1, Section 12.00(F)(4)) (***See*** 81 Fed. Reg. at 66,165) (SSR 96-8p)** Furthermore, the Defendant did not cite valid evidence refuting Plaintiff's testimony during the ALJ hearing, regarding exertional limitations: **(20 CFR 404.1520(a)) (AR 41-52) (Refer to pages 13-17 of this Reply Brief document)**

   a. *"when I wake up in the morning, I have a routine that is slow and I intentionally make appointments and activity and plans for afternoon, if I can help it at all, because I have a hard time getting going every day."* **(AR 41)**

   b. *"I can focus my attention and energy, together, to work for me for a period of about two hours…and then I need to lie down."* **(AR 42)**

   c. *"I often need two naps in one day and sometimes I don't get out of bed at all."* **(AR 42)**

   d. *"The fatigue happens more if I exert, like if I leave the house and I - - I go erranding [PHONETIC] twice a month and I*

*have appointments two or three times a month with my doctors and then I have other reasons to leave the house a couple times a month and those days I need an extra nap."* **(AR 43)**

e. *"...the days I can't get out of bed happen maybe three of four times a month"* **(AR 43)**

f. *"...even when I'm doing simple things, I get interrupted by a thought in my head or somebody would start talking or something loud happens, it wipes the slate clean and so I have to start over."* **(AR 45)**

g. *"I plan my erranding twice a month, early afternoon like on a Tuesday or whatever during the week when people are working, and everything I do is like all in the same intersection. So, like I have my bank and my pharmacy and my grocery and my gas station and where I get my tires checked and everything is all in one corner."* **(AR 45-46)**

h. *"I don't want to be around a lot of people. I can -- like I can do it -- I used to be able to do it for family occasions and stuff and then I would need a day – the next day I would be in bed all day, just recovering from the energy it took to do it."* **(AR 46)**

     i.   *"chores are not a problem because I can break them down into 10 or 15 minutes"* **(AR 47)**

     j.   *"anxiety interrupts my day, several times a day, every day"* **(AR 52)**

5.   The Defendant has not cited evidence that validates the ALJ's statement claiming: *"there is no medically determinable impairment in the treatment records to explain the claimant's fatigue".* **(ECF 16 at 15-16)** Moreover, the ALJ contradicted herself in her decision, stating *"She is drowsy due to the medication and has to nap during the day"* **(AR 19)**

6.   Neither the Defendant, nor the ALJ cited evidence that invalidates the Plaintiff's testimony regarding side effects of her medications. The Plaintiff further maintains that severe side effects from prescribed medications are sufficient, as a *"medically determinable impairment in the treatment records to explain the claimant's fatigue".* **(ECF 15 at 42-43) (ECF 16 at 15-16) (AR 19) (Refer to page 14 of this Reply Brief)**

7.   The Defendant has not cited evidence to refute the Plaintiff's medical evidence representing steady worsening of her condition since onset, as depicted by the steep increase in dosages and variety of medications prescribed at the time of the hearing, compared to the medications prescribed at onset. **(ECF 15 at 29-31) (ECF 16 at 15) (AR 19-20)**

a.  *"The Plaintiff's psychiatric medications were adjusted significantly, from the time of her emotional breakdown in June 2017 until the ALJ hearing in September 2019, spanning a period of approximately 27 months. (AR 309, 314, 323, 334,429, 608-610, 661)"* **(CFR 404.1529(c)(3) and (c)(4) (SSR 16-3p) (SSR 96-8p)**

b.  *"As of July 5, 2017, the Plaintiff's psychiatric medications and dosages were: 150mg daily of Wellbutrin XL; 20mg daily of Prozac, and up to 60mg daily of Buspar, as needed. (AR 309) By comparison, at the date of the ALJ hearing on September 23, 2019, the Plaintiff's psychiatric medications and dosages had been increased to: 450mg daily of Wellbutrin XL; 100mg daily of Pristiq; 2mg daily of Klonopin, and up to 60 mg daily of Buspar, as needed. (AR 661)"* **(CFR 404.1529(c)(3) and (c)(4) (SSR 16-3p) (SSR 96-8p)**

III.  **LEGAL ARGUMENTS**

The Plaintiff has reviewed the Defendant's Response Brief **(ECF 16),** and respectfully contends that the Defendant has not cited evidence that validates the ALJ's denial of DIB. Furthermore, the Plaintiff maintains that the ALJ failed to cite valid evidence to support her findings of facts, because she based her reasons upon mere conclusions. **(ECF 15 at 33-53) (AR 13-24)**

The Plaintiff respectfully contends that **nothing in evidence of record**, as whole, indicates that the Plaintiff's mental health had improved to the extent the ALJ implies in her decision. Thus, the Plaintiff contends that the **ALJ's conclusions are clearly overwhelmed by the evidence of record**, and her decision of "not disabled" is invalid.

The Plaintiff further contends that the "revised rules"[8] have not invalidated the overwhelming evidence supporting the Plaintiff's claims. **(ECF 16 at 7-10)**

*"Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1262 (10th Cir. 2005).* ***"Evidence is not substantial if it is overwhelmed by other evidence or constitutes mere conclusion."*** *Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Grogan, 399 F.3d at 1262.*

The Plaintiff maintains that the ALJ made errors of law, as defined by the United States Federal Administrative Law, within Codes of Federal

---

[8] For the remainder of this Reply Brief, the phrase "revised rules" will represent the agency's "published revisions to its regulations regarding the evaluation of medical evidence, which became effective on March 27, 2017".

Regulations (CFRs) **20 CFR 404.1520 *et seq.*, and 20 CFR 416.920 *et seq.*,** and within **20 CFR 404.1529 *et seq.*;** and **20 CFR 416.929 *et seq.*.**

She further maintains that the ALJ failed to apply proper legal standards this case, as defined in Social Security Rulings (SSRs): **SSR 16-3p**, **SSR 96-8p** and **SSR 00-4p**.

A.  The Plaintiff respectfully contends that the Defendant has not cited valid evidence to refute the Plaintiff's arguments, stating that ALJ did not properly apply legal standards for evaluation of evidence regarding "extreme" and "marked" limitations required to find the Plaintiff "disabled" at step three. The Plaintiff further maintains that the evidence of record, as a whole, confirms the severity and persistence of her functional limitations, as required in paragraph B, to find a person "disabled" under listings 12.04, 12.06 and 12.15, as argued in the Plaintiff's Opening Brief. **(ECF 15 at 27-32, 35-38) (20 CFR 404.1520(a)) (20 CFR 404.1529(c)) (20 CFR 404.1569(a)) (20 CFR 404 Part P, Appendix 1, Section 12.00(F) and (F)(4)) (SSR 16-3p) (SSR 96-8p) (POMS DI 24515.063 Exertional and Nonexertional Limitations) (POMS DI 24510.006 Assessing Residual Functional Capacity (RFC))**

B.  The Plaintiff respectfully contends that the Defendant has not cited evidence that validates the ALJ's reasons for refuting the evidence of Dr. Bali's mental health evaluations, which clearly state the Plaintiff's limitations as "marked" and "extreme". Furthermore, the Plaintiff maintains

that Dr. Bali's professional mental health evaluations in 2018 and 2019, which are consistent with "signs" she personally observed of the Plaintiff's abnormal mood and behavior. Under the "revised rules", these **signs are objective medical evidence**, consistent with the evidence of record, as a whole, that satisfied the criteria required to find the Plaintiff "disabled" at step three, as argued in the Plaintiff's Opening Brief. **(ECF 15 at 35-36) (ECF 16 at 10-12) (AR 498-502, 668-674) (20 CFR 404.1502(a) and (f) and(g)) (20 CFR 404.1520(a)) (20 CFR 404.1520(c)(3)) (SSR 16-3p) (Refer to pages 13-15 of this Reply Brief)**

1. The Defendant has not cited evidence to refute the Plaintiff's argument that the ALJ's repeated reason for denial: ***"…not entirely consistent with the medical evidence…"*** is a legal error, clearly against the rules of adjudication, as stated in SSR 16-3p. Refer to Plaintiff's Opening Brief **(ECF 15 at 45-47) (SSR 16-3p)**

2. Under the "revised rules", the mental health evaluations from Dr. Bali in October 2018 and September 2019 are consistent and supported by the evidence of record. **(20 CFR 404.1529(c)(2-4))**

   a. Dr. Bali's September 2019 mental health evaluation is consistent with her October 2018 mental health evaluation and her July 2017 psychological evaluation, as well as the evidence of record, as a whole. **(AR 498-502, 668-674)**

b.  The ALJ's reasons for refuting Dr. Bali's evidence based on Plaintiff's alleged *"improvement after onset"* are invalid, because they depict **no variance** from Dr. Bali's first psychological evaluation in 2017. <u>As confirmed by the Defendant</u>, Dr. Bali's intake records describe the Plaintiff presented with the following signs:

> *"generally normal physical and mental status examination findings, such as normal gait and station; intact strength; good eye contact; normal grooming, speech, language, concentration, and fund of knowledge; and intact memory"*. **(ECF 16 at 3) (AR 314)**

c.  Furthermore, the Defendant has not cited evidence that validates the ALJ's reasons for refuting Dr. Bali's evidence based on the Plaintiff's *"mental status"* depicted as "normal", "improved", or "above average". The Plaintiff respectfully contends the ALJ's citations regarding "mental status" are misrepresentative of the evidence of record, as a whole, and therefore, invalid. **(ECF 16 at 11)** The ALJ's isolated citations exclude numerous records depicting the Plaintiff's mental status as "unstable/worsening", "abnormal" and "chronic". **(ECF 15 at 45)**

d.  Furthermore, the Defendant has not cited evidence refuting the Plaintiff's argument regarding numerous fluctuations in "mental status", citing UCHealth neuropsychologist, Dr. Greher, as stated in the Plaintiff's Opening Brief. **(ECF 15 at 44)** Dr. Greher clarified a common misconception related to the discrepancy between the Plaintiff's cognitive test scores compared to chronic daily functional limitations. **(AR 549)**

e.  In addition, the Defendant has not cited evidence that validates the ALJ's reasons for refuting Dr. Bali's objective medical evidence, regarding **absenteeism**, expected to cause the Plaintiff to be absent from work *"more than four days per month"*. **(ECF 15 at 36) (AR 21, 674) (20 CFR 404.1529(c)(3)) (SSR 16-3p) (SSR 96-8p) (Refer to page 15-16 of this Reply Brief)**

3.  The Defendant has not cited evidence refuting arguments in the Plaintiff's Opening Brief, depicting the medical opinions of the DDS physicians as stale, unsupported and inconsistent with the record of evidence, as a whole. The DDS reports excluded entirely Dr. Bali's mental health evaluations from 2018 and 2019 and all of the Plaintiff's medical history after September 2018. The DDS reports stated, repeatedly: ***"There is no indication that there is a medical opinion from any medical source."*** For all these

reasons, the DDS reports are invalid evidence. (**AR 71, 73, 88, 90**)

Furthermore, the DDS opinions were formulated without any

contact with the Plaintiff, whatsoever. The inadequacy of the DDS

reports was already discussed in the Plaintiff's Opening Brief.

**(ECF 15 at 18, 37) (ECF 16 at 4-5, 12-13) (AR 20-21, 80-92) (20**

**CFR 404.1529(c)(3) (SSR 16-3p)**

C. The Plaintiff respectfully contends that the Defendant has not cited

evidence that validates the ALJ's reasons for denial of DIB, which were

based on the **"paragraph B"** rules for determination of the Plaintiff's

"severity and persistence" of limitations at step three. **(20 CFR 404.1520a)**

**(20 CFR 404 Part P, Appendix 1, Section 12.00(F) (*See* 81 Fed. Reg. at**

**66,165)** The Plaintiff has already refuted the ALJ's reasons, in the

Plaintiff's Opening Brief. **(ECF 15 at 35) (AR 498-502, 668-674)**

1. The ALJ did not apply the proper legal standard "*How do we use

   the paragraph B criteria to evaluate your mental disorder?*'"

   required for evaluation of medical evidence for mental health

   limitations. **(20 CFR 404 Part P, Appendix 1, Section 12.00(F)**

   **(SSR 16-3p) (SSR 96-8p) (AR 498-502, 668-674)**

2. Specifically, under the "revised rules", the Plaintiff contends that the

   ALJ did not evaluate the Plaintiff's "exacerbations and remissions",

   as required. **(ECF 15 at 45) (ECF 16 at 11) (20 CFR 404 Part P,**

**Appendix 1, Section 12.00(F)(4)) (*See* 81 Fed. Reg. at 66,165) (SSR 16-3p) (SSR 96-8p)**

3. Moreover, neither the Defendant, nor the ALJ cited evidence refuting the Plaintiff's exacerbations and remissions clearly represented by the evidence of record, as a whole. The Plaintiff's AllHealth medical records clearly state her condition intermittently "normal" and "abnormal", "stable" and "unstable", "improving" and "worsening". **(ECF 15 at 45) (ECF 16 at 11) (20 CFR 404 Part P, Appendix 1, Section 12.00(F)(4)) (*See* 81 Fed. Reg. at 66,165) (SSR 96-8p)**

D. The Plaintiff respectfully contends that the Defendant has not cited evidence that validates the ALJ's reasons for denial of DIB, specifically regarding her RFC determination of the Plaintiff's RFC capabilities *"at all exertional levels"*. **(20 CFR 404.1520(a)) (20 CFR 404.1569(a)) (SSR 96-8p) (POMS DI 24515.063 Exertional and Nonexertional Limitations)** Moreover, the Plaintiff contends the ALJ did not cite valid evidence supporting her conclusions in the RFC of the Plaintiff's capabilities *"at all exertional levels"* in her decision letter, as required. **(AR 13-24) (20 CFR 404.1569(a) (POMS DI 24510.006 Assessing Residual Functional Capacity (RFC) in Initial Claims)** This argument has already been argued in the Plaintiff's Opening Brief". **(ECF 15 at 47-48) (SSR 96-8p)**

1. Neither the Defendant, nor the ALJ, evaluated or discussed the Plaintiff's arguments regarding RFC limitations that excluded combination of exertional and non-exertional limitations. **(ECF 15 at 47-48) (20 CFR 404.1545) (20 CFR 404.1569(a) (20 CFR 404 Part P, Appendix 1, Section 12.00(F)(4)) (*See* 81 Fed. Reg. at 66,165) (SSR 96-8p) (POMS DI 24515.063)**

2. The Defendant has not cited valid evidence refuting the Plaintiff's arguments depicting exertional limitations caused by her mental health disorders and the side effects of her prescribed medications, which were steadily increased over time. **(ECF 15 at 47-48) (20 CFR 404.1545) (20 CFR 404.1569(a) (20 CFR 404 Part P, Appendix 1, Section 12.00(F)(4)) (*See* 81 Fed. Reg. at 66,165) (SSR 96-8p) (Refer to this Reply Brief document, pages 30-31)**

3. The Defendant has not cited evidence to refute the Plaintiff's arguments that limitations of absenteeism and off-task interruptions (caused by exertional limitations) would effectively eliminate all available vocational positions from her capabilities. **(ECF 15 at 23-24, 47-50) (AR 58-59) (20 CFR 404.1545) (20 CFR 404.1569(a) (20 CFR 404 Part P, Appendix 1, Section 12.00(F)(4)) (*See* 81 Fed. Reg. at 66,165) (SSR 96-8p) (POMS DI 24515.063) (Refer to this Reply Brief document, pages 13-17)**

4. Neither the Defendant, nor the ALJ cited evidence that validates the Plaintiff's capabilities to **_"use the area of mental functioning on a regular and continuing basis (8 hours a day, 5 days a week, or an equivalent work schedule"_**, as required by the ALJ's RFC evaluation. **(ECF 15 at 47-48) (20 CFR 404.1545) (20 CFR 404 Part P, Appendix 1, Section 12.00(F)(4)) (_See_ 81 Fed. Reg. at 66,165) (SSR 96-8p) (Refer to this Reply Brief document, pages 13-17)**

5. The Plaintiff's contends that a reasonable mind would conclude that her exertional limitations are clearly depicted by her exacerbations and remissions. As argued the Plaintiff's Opening Brief, the Plaintiff's fatigue and exertional limitations are misrepresented in the ALJ's RFC. **(ECF 15 at 47-48) (20 CFR 404.1545) (20 CFR 404.1569(a) (_See_ 81 Fed. Reg. at 66,165) (20 CFR 404 Part P, Appendix 1, Section 12.00(F)(4)) (SSR 96-8p)**

6. Furthermore, the Defendant did not cite valid evidence refuting Plaintiff's testimony during the ALJ hearing, regarding exertional limitations for daily activities. **(AR 41-52) (20 CFR 404.1569(a) (20 CFR 404 Part P, Appendix 1, Section 12.00(F)(4)) (SSR 96-8p) (Refer to this Reply Brief, pages 13-17)**

## IV.    CONCLUSION

For all the reasons stated in the Plaintiff's Opening Brief and this Reply

Brief, the Plaintiff respectfully contends that the ALJ's reasons for denial of

DIB are **clearly overwhelmed by the evidence of record**, and her decision

of "not disabled" is invalid.

Thus, the Plaintiff respectfully maintains her request for the Court to

order a remand for immediate award of Disability Insurance Benefits (DIB),

representing the maximum monthly amount and any additional relief as may

be just and proper under the circumstances of this case.

**More than 52 months have passed** since the Plaintiff was forced to

stop working full time, due to mental health limitations, in September 2016.

**(ECF 15 at 6-7) (AR 19, 36-38)** Repeated delays in awarding the Plaintiff's

DIB continue to cause debilitating financial stress and exacerbate the

Plaintiff's mental health limitations.

Respectfully submitted, this 14th day of January, 2021.

<u>s/ Andrea C Johnston</u>
ANDREA C JOHNSTON
6217 South Sterne Parkway
Littleton, CO  80120
(720) 447-2039
ajohnston@virtualindeed.com
Plaintiff, *Pro Se*

**CERTIFICATE OF SERVICE BY ECF COURT FILING**

DATED this 14th day of January, 2021. The foregoing Plaintiff's Reply Brief was served by Electronic Court Filing (ECF) to:

JASON R. DUNN
Acting United States Attorney

J. BENEDICT GARCÍA
Assistant United States Attorney
United States Attorney's Office
District of Colorado
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0128
j.b.garcia@usdoj.gov

VICTORIA V. JOHNSON
Special Assistant United States Attorney
Assistant Regional Counsel
Office of the General Counsel
Social Security Administration
1961 Stout Street, Suite 4169
Denver, CO 80294-4003
Telephone: 303-844-7192
victoria.johnson@ssa.gov

NOAH SCHABACKER
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
1961 Stout Street, Suite 4169
Denver, CO 80294-4003
Telephone: (303) 844-6232
noah.schabacker@ssa.gov

Attorneys for Defendant

By s/ Andrea C Johnston
ANDREA C JOHNSTON
6217 South Sterne Parkway
Littleton, CO  80120
(720) 447-2039
ajohnston@virtualindeed.com

Plaintiff, *Pro Se*