IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-01366-PAB

ANDREA C. JOHNSTON,

       Plaintiff,

v.

KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security,

       Defendant.

_____

**ORDER**
_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Andrea Johnston on May 13, 2020.  Plaintiff seeks review of the final decision of the defendant (the "Commissioner") denying her claim for insurance benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433 and 1381-1383c.[2]  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[3]

## I.  BACKGROUND

On June 28, 2018, plaintiff protectively applied for social security benefits under

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court will substitute Kilolo Kijakazi as defendant for Andrew Saul, former Commissioner of Social Security.

[2] Plaintiff is proceeding pro se in this appeal.  Accordingly, the Court "liberally construe[s] her brief."  *See Adams ex rel. D.J.W. v. Comm'r*, 659 F.3d 1297, 1302 n.1 (10th Cir. 2011) (quoting *Cummings v. Evans*, 161 F.3d 610, 613 (10th Cir. 1998)).

[3] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

Titles II and XVI of the Act.  R. at 13.[4]  Plaintiff alleged a disability onset date of June 15, 2017.  *Id.*  After her claims were initially denied on October 1, 2018, plaintiff requested a hearing before an administrative law judge ("ALJ").  R. at 96, 100.  A hearing was held on September 23, 2019.  *See* R. at 31.  On November 6, 2019, the ALJ issued a decision denying plaintiff's claim.  R. at 10-11.

The ALJ found that plaintiff had not been disabled within the meaning of the Act since June 15, 2017.  R. at 14.  The ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2022 and had not engaged in substantial gainful activity ("SGA") since June 15, 2017.  R. at 15.  The ALJ found that plaintiff has the following severe impairments: (1) major depressive disorder; (2) post-traumatic stress disorder ("PTSD"); (3) generalized anxiety disorder; and (4) adjustment disorder. R. at 16.  The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. at 16.  Ultimately, the ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> claimant is limited to unskilled job tasks.  Further, she is able to have no interaction with the general public and only occasional interaction with coworkers and supervisors.  She is unable to engage in tandem job tasks. Moreover, she must avoid exposure to large crowds and loud noises, such as noises louder than office noise.  Finally, the claimant is limited to a low stress work environment with no production rate or constant motion job tasks.

R. at 18.  The ALJ determined that plaintiff was unable to perform any past relevant

---

[4] The Court uses the page numbers corresponding to the labeling of the record, which are found in the lower right-hand corner of each page.

work, R. at 22, but found that jobs existed in significant numbers in the national economy that plaintiff could perform.  R. at 23.

On April 17, 2020, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  R. at 1.  Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II.  STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citation and quotation omitted).  "The threshold for such evidentiary sufficiency is not high."  *Id.*  However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for

3

reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991).

## IV.  DISCUSSION

Plaintiff alleges the following errors in the ALJ's decision: (1) the ALJ disregarded plaintiff's evidence from treating physicians and relied heavily on the Disability Determination Services ("DDS") physicians' determinations; (2) the ALJ erred in her review of other medical evidence; (3) the ALJ erred in her review of the plaintiff's testimony and other evidence supporting her claims; (4) the ALJ erred in her development of the plaintiff's RFC; and (5) the ALJ misapplied testimony from the Vocational Expert ("VE") in her decision.  Docket No. 15 at 34-51.

### A.  Medical Opinions

The ALJ considered the medical opinions of (1) Lori Leopold, D.O., DDS physician; (2) Maninder Bali, M.D., plaintiff's psychiatrist; (3) Sarah Sexton, Psy.D., DDS psychologist; and (4) Dalton Ross, L.C.S.W., plaintiff's treating therapist.  *See* R. at 20-22.  The ALJ found Dr. Leopold and Dr. Sexton's opinions persuasive. *Id.*  The ALJ found portions of Dr. Bali's opinions persuasive and portions of her opinions

5

unpersuasive.  R. at 21.  The ALJ found Mr. Ross's opinion unpersuasive.  R. at 22.

Plaintiff argues that the ALJ erred in finding portions of Dr. Bali's opinions and Mr. Ross's opinion unpersuasive.  Docket No. 15 at 35-40.  Plaintiff argues that it was error for the ALJ to find the opinions of the non-treating DDS sources more persuasive than Dr. Bali.  *Id.* at 37-38.  Additionally, plaintiff argues the ALJ failed to consider the longitudinal evidence.  *Id.* at 37.  According to plaintiff, if the ALJ had found Dr. Bali persuasive, as she should have, then the ALJ would have found her disabled at step three.  *See id.* at 35.

Title 20 C.F.R. §§ 404.1520c and 416.920c govern how an ALJ considers medical opinions for claims filed on or after March 27, 2017.  An ALJ will consider the persuasiveness of each medical source's opinion using the following factors:

> (1) Supportability.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
> (2) Consistency.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.
> (3) Relationship with the claimant.  This factor combines consideration of the issues in paragraphs (c)(3)(i)-(v) of this section.
>       (i) Length of the treatment relationship. . . .
>       (ii) Frequency of examinations. . . .
>       (iii) Purpose of the treatment relationship. . . .
>       (iv) Extent of the treatment relationship. . . .
>       (v) Examining relationship. . . .
> (4) Specialization.  The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.
> (5) Other factors.  We will consider other factors that tend to support or

6

contradict a medical opinion or prior administrative medical finding.  This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.  When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The regulations state that "[t]he most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency."  *Id.* §§ 404.1520c(a), 416.920c(a).  An ALJ is not required to explain her consideration of the factors in paragraphs (c)(3) through (c)(5) unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical.  *Id.* §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).

### 1. Dr. Bali

The ALJ discussed many opinions from Dr. Bali.  *See* R. at 21.  The ALJ found the following opinions somewhat persuasive: Dr. Bali's October 2018 opinion that plaintiff had (1) marked limitations in her ability to understand, remember, and carry out complex instructions; (2) moderate impairments in her ability to make judgments on simple work-related decisions and respond appropriately to usual work situations and changes in routine work settings; (3) mild impairments in her ability to understand, remember, and carry out simple instructions; and (4) poor memory.  R. at 21.  The ALJ found the following opinion's by Dr. Bali unpersuasive: (a) an October 2018 opinion that plaintiff had extreme limitations in her ability to make judgments on complex work-

7

related decisions; (b) September 2019 opinions that plaintiff (i) was seriously limited or unable to meet competitive standards in a number of mental abilities and aptitudes needed to perform unskilled, semiskilled, and skilled work; (ii) had marked limitations in her ability to concentrate, persist, maintain pace, and adapt in the workplace; (iii) had mild limitations in her ability to remember and apply information; (iv) would likely miss more than four days of work per month if she were to work on a full-time basis; and (c) Med-9 and Aid to the Needy Disabled ("AND") Program forms.  R. at 21-22.  The ALJ found opinion (a) not supported by Dr. Bali's treatment records, which showed improvement after plaintiff's alleged onset date, and inconsistent with mental status examinations, which largely showed normal concentration, attention, and memory.  R. at 21.  The ALJ found opinions (b)(i)-(iv) unpersuasive for the same reasons.  *Id.*  The ALJ found opinion (c) unpersuasive because these forms "are on an issue reserved for the Commissioner."  R. at 22.

The ALJ applied the correct legal standard in evaluating the medical opinions. The issue then becomes whether substantial evidence supports the ALJ's decision to find some of Dr. Bali's opinions persuasive and some unpersuasive.  *See Jean v. Comm'r*, 2021 WL 4168124, at *5 (D. Kan. Sept. 14, 2021) ("[O]nce it is determined that the correct legal standard was applied, the question becomes whether substantial evidence in the record supports the ALJ's findings, not whether there is or could have been a 'better' or 'more correct' application of the standard.").

The ALJ's primary reason for discounting the more serious limitations in Dr. Bali's opinions is because they are "not supported by Dr. Bali's treatment records, which showed that the claimant's mental health conditions improved after the alleged onset

8

date." R. at 21. The ALJ supports this statement by citing exhibits 4F and 16F, *see id.*, which are a combined 247 pages. Plaintiff argues that a cite to this many pages, which show abnormal, unstable/worsening, and chronic conditions according to plaintiff, is insufficient to support the ALJ's conclusion that Dr. Bali's treatment records showed improvement. Docket No. 15 at 45. While the Court agrees that broadly citing to almost 250 pages of records to show improvement, without more, may not be sufficient, the ALJ's decision is to be read as a whole. Earlier in the decision, the ALJ made reference to documents showing improvements in plaintiff's condition since her alleged disability onset date. *See* R. at 19-20; *Montez v. Comm'r*, 2020 WL 1188103, at *8 (D. Utah Mar. 12, 2020) ("[T]he ALJ set forth a summary of the inconsistent evidence and was not required to recite it again in finding that Dr. Kulkami's was not persuasive."). Specifically, the ALJ cited documents showing a normal mental status examination in October 2018, improved mood with medication modification, normal mood, affect, and behavior during physical examinations, and above average neurocognitive tests. R. at 20. The ALJ noted that plaintiff specifically reported that her mood improved when her medications were tweaked and her mental health deteriorated when she was not on her medications, and the ALJ cited pages in exhibits 4F and 16F that supported this. *See* R. at 20.

Plaintiff argues that these records in fact support finding her disabled because they show chronic conditions without improvement. *See* Docket No. 15 at 45. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

The ALJ discussed the opinions from Dr. Bali that she rejected as unsupported by treatment notes and mental status tests.  R. at 21.  Plaintiff essentially asks the Court to reweigh the evidence in the record, arguing that the evidence she puts forward demonstrates that the ALJ's conclusion was incorrect.  However, the Court is not permitted to "reweigh the evidence or retry the case."  *Flaherty*, 515 F.3d at 1070.  Rather, the Court must examine the record to determine whether substantial evidence supports the ALJ's decision.  *Id.*  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.

The record demonstrates that the ALJ's decision to find Dr. Bali's opinions of more serious limitations unpersuasive is supported by substantial evidence.  The ALJ found that Dr. Bali's opinions (a)-(c) were unpersuasive because they were inconsistent with the Dr. Bali's treatment notes.  Numerous reports show that plaintiff's depression, anxiety, and PTSD were stable, and that she had normal physical and mental status examinations.  *See, e.g.*, R. at 632-34 (stating that depression, anxiety, and PTSD were stable in December 2018 treatment notes); R. at 654 (finding same in March 2019 notes); R. at 661 (finding same in May 2019 notes).  Consistency "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."  *Miles v. Comm'r*, No. 20-cv-01456-WJM, 2021 WL 3076846, at *3 (D. Colo. July 21, 2021) (quoting *Vellone v. Saul*, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021)).  In light of the evidence that plaintiff improved with continued treatment and medication, the Court finds this decision supported by substantial evidence.  *See id.* at *4 ("[T]he fact that the evidence could support another conclusion

does not necessarily mean that the ALJ erred in her analysis.").

### 2. DDS Medical Opinions

Plaintiff argues that the ALJ should have found the DDS medical opinions less persuasive because they did not treat plaintiff, s*ee* Docket No. 15 at 37; the Court rejects this argument.  For claims filed before March 27, 2017, treating-source opinions are given "controlling weight" when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent" with other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  However, the regulations were revised for claims, like plaintiff's, filed on or after March 27, 2017.  *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017), *as amended in* 82 Fed. Reg. 15132 (Mar. 27, 2017).  "Under the revised regulations applicable here, the ALJ does not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), including those from the claimant's medical sources."  *Zhu v. Comm'r*, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021) (unpublished) (internal footnote, quotation marks, and alterations omitted).  Instead, the ALJ examines a source's supportability, consistency, relationship with claimant, specialization, and other factors to determine the persuasiveness of medical opinions. *See* 20 C.F.R. § 404.1520c(c).  While the fact that Dr. Bali had a treatment relationship with plaintiff and the DDS physicians did not was a proper consideration for the ALJ, the ALJ did not need to discuss this factor unless she found that the two medical opinions were equally well-supported and consistent with the record, but differed from each other.  *See id.* § 404.1520c(b)(3).

The ALJ found persuasive Dr. Leopold's opinion that claimant had no physical, medically-determinable impairments that cause significant work-related functional limitations because such opinion was consistent with and supported by the lack of treatment for physical conditions.  R. at 20-21.

Dr. Sexton opined that plaintiff (1) has mild limitations in adapting or managing herself and moderate limitations in the other "paragraph B" criteria; (2) can manage normal workplace interactions; (3) retains the mental ability to do work involving some skills, but not involving complex duties; (4) can be expected to do work requiring up to one-half a year's time to learn the techniques, acquire information, and develop the faculty needed for an average job performance; (5) is able to accept supervision and interact with co-workers as long as the contact is not frequent or prolonged; and (6) is able to adapt to work-related situations as long as the work demands are within her mental RFC limitations.  R. at 21.  The ALJ found this opinion persuasive because it is supported by treatment records showing frequent and lengthy mental health treatment and is consistent with plaintiff's mental status examinations.  R. at 22.

The ALJ determined the persuasiveness of Dr. Leopold and Dr. Sexton's opinions based on their supportability and consistency, and the Court finds the decision supported by substantial evidence.

### 3.  Mr. Ross

Mr. Ross, a licensed clinical social worker ("L.C.S.W."), opined that plaintiff's mental health conditions limit her ability to work a full-time schedule and that she would benefit from a part-time volunteer position or a part-time job.  R. at 22.  The ALJ found this opinion unpersuasive because Mr. Ross did "not provide support for his opinion in

his letter, nor is his opinion supported by his treatment records, which show that the claimant had normal concentration, attention, and memory on mental status examinations." *Id.* Additionally, the ALJ found it was not consistent with the record as a whole, which showed improvements over time. *Id.* Plaintiff argues that the ALJ should have found Mr. Ross's opinion persuasive because it was based on "face-to-face bi-weekly treatment sessions" and is consistent with the record as a whole. Docket No. 15 at 40. Plaintiff also quotes a portion of Mr. Ross's opinion that states that he has used "evidence-based treatment modalities" and family therapy with plaintiff to help alleviate her symptoms. *Id.* (quoting R. at 667).

As noted above, while the fact that Mr. Ross was plaintiff's treating therapist is a factor the ALJ can consider in determining the persuasiveness of his opinion, it is not dispositive. Instead, the ALJ found that the opinion was not well supported or consistent with the record. "'Supportability' examines how closely connected a medical opinion is to the evidence and the medical source's explanations." *Zhu*, 2021 WL 2794533, at *6.

The ALJ's decision to find Mr. Ross's opinion unsupported is justified by substantial evidence. An opinion devoid of explanation is less persuasive. *See id.* Mr. Ross's opinion describes his treatment methods, but does not explain why plaintiff's symptoms lead to his conclusion that she is precluded from full time employment. *See* R. at 667. Plaintiff's argument that Mr. Ross's "letter is consistent with the evidence of record, as a whole[,]" Docket No. 15 at 40, is insufficient to find the ALJ's decision unsupported by substantial evidence. Additionally, whether plaintiff is able to perform regular work is an issue reserved for the Commissioner, and the ALJ need not provide

13

any analysis of how she considered contrary opinion evidence.  *See* 20 C.F.R.

§ 404.1520b(c) (because "[s]tatements that you are or are not disabled, blind, able to

work, or able to perform regular or continuing work" are "inherently neither valuable nor

persuasive to the issue of whether" a claimant is disabled under the Act, an ALJ "will not

provide any analysis about how [he or she] considered such evidence in [his or her]

determination or decision").  Accordingly, the Court find the ALJ's decisions on the

persuasiveness of each medical opinion is supported by substantial evidence.

### B.  Nonmedical Opinions

The ALJ considered the nonmedical opinions of plaintiff; her son, Ethan

Johnston; her former husband, Bradley Johnston; her best friend, Lisa Bleiler; and her

daughter, Molly Johnston.  R. at 19-20, 22.  The ALJ evaluated plaintiff's opinions.  The

ALJ considered, but did not specifically evaluate, the other opinions because, since they

were not medical opinions, the regulations did not require it.  *Id.*  Plaintiff argues that the

ALJ misapplied SSR 16-3p by improperly evaluating her testimony as well as failing to

evaluate the other nonmedical opinions.  Docket No. 15 at 39-47.

### *1.  Plaintiff's Statements*

The framework for an ALJ to evaluate a claimant's statements about his or her

symptoms is explained in 20 C.F.R. § 404.1529(c)(4):

> We will consider your statements about the intensity, persistence, and
> limiting effects of your symptoms, and we will evaluate your statements in
> relation to the objective medical evidence and other evidence, in reaching
> a conclusion as to whether you are disabled.  We will consider whether
> there are any inconsistencies in the evidence and the extent to which
> there are any conflicts between your statements and the rest of the
> evidence, including your history, the signs and laboratory findings, and
> statements by your medical sources or other persons about how your

symptoms affect you.

20 C.F.R. § 404.1529(c)(4).  "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017).  An ALJ is to consider the following factors relevant to a claimant's symptoms: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.  *See id.* at *7-8; 20 C.F.R. § 404.1529(c)(3).

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and evidence in the record.  R. at 20.  The ALJ found plaintiff's statements about the intensity, persistence, and limiting effects inconsistent with treatment records showing improved mental health conditions with treatment.  *Id.*  Plaintiff consistently had normal concentration, attention, and mental status examinations, but her mental health deteriorated when she was not on her

15

medication.  *Id.*  The ALJ also found that plaintiff's daily activities demonstrated greater functional capacity than she alleged.  *Id.*  For instance, plaintiff tends to her personal care, does laundry and vacuuming, washes dishes, performs household repairs, shops in stores, and manages her finances.  *Id.*

Plaintiff argues that the ALJ fell prey to a common misconception regarding the discrepancy between plaintiff's positive cognitive test results and functional limitations. Docket No. 15 at 44.  Plaintiff quotes Dr. Michael Greher, who performed neurocognitive tests on plaintiff, that "there is a notable discrepancy between the patient's cognitive complaints and her actual abilities observed in objective testing.  Such discrepancies are not uncommon in patients with significant psychological challenges and stressors, which tend to impact people more negatively in the course of more challenging demands of everyday life than they do in the controlled environment of neuropsychological testing."  *Id.* (quoting R. at 549).  Dr. Greher made this statement after finding that plaintiff's "neurocognitive score is notable for entirely normal scores with many impressive performances that fell in the average and above average ranges, and no deficient scores on any one test."  R. at 548.  While plaintiff may suffer increased symptoms in stressful situations, Dr. Greher's report provides substantial evidence for the ALJ's conclusion that plaintiff's statements concerning her cognitive abilities are not consistent with the medical evidence.

Additionally, "[w]hile 'sporadic performance' of activities, like performing a few household tasks, 'does not establish that a person is capable of engaging in substantial gainful activity,' the Tenth Circuit has consistently held that an ALJ may reasonably consider such activities when they are inconsistent with a claimant's reported

limitations." *Wagner v. Berryhill*, 2017 WL 3981147, at *9 (W.D. Okla. Sept. 11, 2017)

(quoting *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987)) (internal citation

omitted).  The ALJ found that plaintiff's daily activities were inconsistent with her

reported symptoms, and this determination is supported by substantial evidence.

Accordingly, the Court finds that the ALJ properly applied SSR 16-3p and the ALJ's

determination that plaintiff's statements concerning the intensity, persistence, and

limiting effects of her symptoms were not consistent with the medical evidence is

supported by substantial evidence.

### 2.  Other Nonmedical Opinions

Plaintiff argues that the ALJ violated SSR 16-3p by not specifically evaluating the

opinions of her family members and best friend.  Docket No. 15 at 39.  The ALJ stated

that she considered these opinions, but, "[s]ince these are not medical opinions, the

undersigned need not specifically evaluate these symptoms."  R. at 22.  An ALJ is not

required to use the medical opinion framework when evaluating a nonmedical opinion.

*See* 20 C.F.R. § 1520c(d) ("We are not required to articulate how we considered

evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this

section.").  SSR 16-3p states that, "[i]f we cannot make a disability determination or

decision that is fully favorable based solely on objective medical evidence, then we

carefully consider other evidence in the record in reaching a conclusion about the

intensity, persistence, and limiting effects of an individual's symptoms."  2017 WL

5180304, at *6.  "[N]on-medical sources such as family and friends" are "[o]ther sources

[who] may provide information from which we may draw inferences and conclusions

about an individual's statements that would be helpful to us in assessing the intensity,

persistence, and limiting effects of symptoms."  *Id*. at *7.

 As the ALJ noted, the ALJ was not required to evaluate the nonmedical evidence in the same manner as the medical evidence.  R. at 22; *see* 20 C.F.R. § 1520c(d).  The ALJ stated that she considered the statements from these nonmedical sources, and the Court will "take a lower tribunal at its word when it declares that it has considered a matter."  *Flaherty*, 515 F.3d at 1071 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)).  While the ALJ did not specifically go through each of the other nonmedical opinions, as she did for plaintiff's opinions, "any error in failing to do so is harmless because 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims."  *Best-Willie v. Colvin*, 514 F. App'x 728, 736 (10th Cir. 2013) (unpublished) (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).  Accordingly, the Court finds the ALJ complied with SSR 16-3p in evaluating plaintiff's testimony and the other nonmedical opinions about her symptoms.

### C.  Step Three

 Plaintiff argues that the ALJ erred in concluding none of her impairments met the paragraph B criteria listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  Docket No. 15 at 34.  Plaintiff argues that she meets the listings for § 12.04, depressive, bipolar, and related disorders, § 12.06, anxiety and obsessive-compulsive disorders, and § 12.15, trauma- and stressor-related disorders.  *Id.*

 Listed impairments are "conclusively presumed to be disabling."  *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007) (internal quotation marks omitted).  "For a claimant to show that [her] impairment matches a listing, it must meet all of the specified

18

medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  An impairment is "equivalent" to a listed impairment if there are medical findings "at least of equal medical significance to the required criteria."  20 C.F.R. § 416.926.

The ALJ examined whether plaintiff met the listing criteria for § 12.04, § 12.06, and § 12.15.  R. at 16-17.  The ALJ examined whether plaintiff met the criteria under "paragraph B" or "paragraph C."  R. at 16-18.  Under paragraph B, the ALJ examined plaintiff's abilities to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."  20 C.F.R. § 404, subpt. P, app. 1, §§ 12.04(B); 12.06(B); 12.15(B).  To satisfy this criteria, plaintiff's mental disorder must result in an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning.  *Id.*

The ALJ found that plaintiff had moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting or maintaining pace; and moderate limitations in adapting or managing onself.  R. at 17.  Because plaintiff did not have any "marked" limitations, the ALJ concluded that plaintiff did not meet the criteria for disabled under sections 12.04, 12.06, and 12.15 of paragraph B.  R. at 18.  The ALJ found that plaintiff was also not disabled under sections 12.04, 12.06, or 12.15 of the paragraph C criteria because she did not have a "marginal adjustment, defined as the minimal capacity to adapt to changes in the claimant's environment or to demands not already part of her daily life."  *Id.*

The ALJ's decision comports with the opinions that she found persuasive.

19

Additionally, the ALJ explained why she found moderate limitations for each of these criteria. *See* R. at 17. Plaintiff argues the ALJ erred because Dr. Bali opined that plaintiff had marked and extreme limitations, and the ALJ improperly rejected this opinion. Docket No. 15 at 35. The Court will uphold the ALJ's determinations of the persuasiveness of each opinion as based on substantial evidence. *See infra* pp. 5-14. Accordingly, the Court will also find that the ALJ's determination that plaintiff did not have one extreme or two marked limitations is supported by substantial evidence.

### D.  Step Four

The ALJ found that plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> claimant is limited to unskilled job tasks. Further, she is able to have no interaction with the general public and only occasional interaction with coworkers and supervisors. She is unable to engage in tandem job tasks. Moreover, she must avoid exposure to large crowds and loud noises, such as noises louder than office noise. Finally, the claimant is limited to a low stress work environment with no production rate or constant motion job tasks.

R. at 18. In making this RFC, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p. The [ALJ] also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c." *Id.*

Plaintiff argues that the ALJ erred at step four by misapplying SSR 96-8p and not providing substantial evidence to support the reasons for discounting plaintiff's testimony regarding her abilities. Docket No. 15 at 47-48. Plaintiff is claiming that the

ALJ erred in the RFC determination because the ALJ's RFC did not include exertional limitations.  *See id.*  The ALJ's RFC aligns with the opinions she found persuasive, and the Court has found that the ALJ's reasons for finding opinions persuasive or unpersuasive are supported by substantial evidence.  *See infra* pp. 5-14.  Accordingly, the Court finds that the RFC is supported by substantial evidence.  For the same reason, the Court rejects plaintiff's argument that the ALJ misapplied SSR 96-8p, which relies on her argument that the ALJ did not consider plaintiff's testimony and evidence properly.

### E.  Vocational Expert Testimony

Plaintiff argues that the ALJ did not cite substantial evidence to support her findings from the testimony of the VE.  *Id.* at 49.  Plaintiff claims that the ALJ erred in not including the VE's testimony that plaintiff's off-task interruptions and absenteeism would both effectively render her disabled if combined with her RFC.  *Id.*  This is simply another argument regarding plaintiff's RFC; the alleged error is not including these limitations in plaintiff's RFC.  Having found that the ALJ's determination of persuasive opinions is supported by substantial evidence, and that the RFC aligns with these persuasive opinions, the Court finds no error in the ALJ's RFC.  *See Zhu*, 2021 WL 2794533, at *6 ("The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by [plaintiff] but not accepted by the ALJ as supported by the record." (quoting *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995)).

Plaintiff also argues that the ALJ failed to resolve discrepancies between the VE's testimony and the Dictionary of Occupational Titles ("DOT").  Docket No. 15 at 51.  At

the hearing, the VE explained that the DOT does not specifically address issues regarding "public contact, co-workers, supervisors, tandem tasks, low-stress work, production rate . . . crowds of people and off task and absenteeism."  R. at 60. Accordingly, the VE supplemented the DOT with his experience in the vocational field when he was asked about these limitations.  R. at 59-60.  The ALJ stated that, "[t]o the extent that the DOT does not consider limited interaction with others in the positions listed above, the undersigned relies on the vocational expert's education, experience, and training."  R. at 24.  Plaintiff argues that the ALJ resolved discrepancies between the RFC and DOT involving interactions with others, but the ALJ did not do the same for the limitations of low-stress work and production rate that the ALJ included in the RFC. Docket No. 15 at 51.

This argument is unpersuasive.  There is no contradiction between the RFC and the DOT.  The VE testified that, with the RFC the ALJ found, the jobs of mail clerk, collator-operator, and cleaner would be possible for plaintiff.  R. at 58.  The VE also testified that this was consistent with the DOT.  R. at 59.  However, the VE went further and supplemented the DOT with his experience to find positions compatible with the non-exertional limitations the ALJ proposed.  R. at 59-60.  Plaintiff has not identified any conflict between the VE's testimony and the DOT.

## V.  CONCLUSION

Plaintiff has not demonstrated error in the ALJ's decision.  Therefore, it is

**ORDERED** that the decision of the Commissioner finding that plaintiff is not disabled is **AFFIRMED**.

DATED May 6, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge